IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| *MARTIN MISJUNS,* ) | |
| ) | |
| *Plaintiff,* ) | Case No. 6:21-cv-00025 |
| v. ) | |
| ) | |
| *LYNCHBURG FIRE DEPARTMENT, et. al.* ) | |
| ) | |
| *Defendants.* ) | |
| _____ ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
DEPOSITION DESIGNATIONS, WITNESSES, AND EXHIBITS (Dkt. 93-95)**

COMES NOW your Plaintiff, Martin J. Misjuns, by counsel, and files this Response to Defendant's Objections to his timely-filed witness and exhibit lists in the above-captioned matter (Dkt 94 and 95). In support thereof, Plaintiff states as follows:

    I.    **RESPONSE TO OBJECTIONS TO DEPOSITION DESIGNATIONS**

1. Plaintiff does not intend to use his own deposition testimony other than potentially to refresh recollection as to what his deposition testimony was.

2. Plaintiff intends to utilize information from any other deposition only for purposes of impeachment.

3. Plaintiff is entitled to utilize testimony showing that the City's "workplace behavior" investigation was pretextual. The City has placed this evidence in issue by asserting the "workplace behavior" investigation as its primary defense to Plaintiff's First Amendment viewpoint discrimination claim. Plaintiff is entitled to inquire not only into his own claims, but also the City's defenses to the claims.

4. Plaintiff's claims that his political and religious speech was treated differently from that of other firefighters is not offered to show an equal protection violation, but rather to show that Plaintiff was discriminated against due to the viewpoint of his speech. Plaintiff would be

hardpressed to make such a showing without showing that speech of opposing political and religious perspectives is acceptable to the City, while Plaintiff's is not. The evidence is not only relevant, but directly central to Plaintiff's First Amendment allegations.

5. A showing that Mary Jane Dolan – an initial Individual Defendant in this case – is a political opponent is relevant for demonstrating Plaintiff's case that left-leaning speech by his co-workers was tolerated, while he was punished for the viewpoint of his right-leaning speech. The inference that Dolan's politics may have influenced her reaction is wholly relevant.

6. The Second Amendment sanctuary posts are relevant for impeachment purposes. Dolan testified at her deposition that she was frightened by citizen comments in support of Plaintiff in response to his petition, to the point that she requested added security at her home. She also testified that the level of activism over the sanctuary issue did not frighten her. But at the time, she made multiple statements that she was frightened and requested added security. This is relevant both for impeachment, and to show that Plaintiffs' political opponents exaggerated the level of "disruption" caused by his reposting of editorial cartoons.

7. Defendant's "workplace behavior" "investigation" raises as one of its claims that Plaintiff undertook "improper" inquiry into personal information of colleagues. A showing that Plaintiff sought information only to which he was entitled by law is entirely relevant and central to Plaintiff's defense against Defendant's "improper inquiry" charge.

8. Plaintiff does not intend to use Dolan's testimony to show intent of others on City Council.

9. As part of his viewpoint discrimination claim, Plaintiff has pointed out the fact that Wormser participated in a Black Lives Matter protest in uniform, on City property, and on paid time, all of which are not allowed by the City's Policy Handbook, while the political activities alleged against Plaintiff are all expressly permitted by the Policy Handbook. Plaintiff is entitled to show the widely disparate enforcement of the Policy Handbook to show the viewpoint discrimination by Defendant against Plaintiff. Wormser has attempted to claim that reposting syndicated editorial cartoons is "political," whereas a BLM protest is not

"political." Plaintiff is entitled to submit to the witness evidence showing the political nature of BLM.

## II. RESPONSE TO OBJECTIONS TO WITNESS LIST

1. Defendant lodges a general timeliness objection, presumably based on Rule 26(a)(3) of the Federal Rules of Civil Procedure. The Rule provides, "Unless the court orders otherwise, these disclosures must be made at least 30 days before trial." However, the pretrial order in this matter, Dkt. 13, paragraph 21, states, "The parties shall exchange lists of the witnesses they expect to call at trial no later than 21 days before the trial." Accordingly, the general command of Rule 26(a)(3) is superseded, by its terms, since "the court order[ed] otherwise." Plaintiff's witness list was submitted on July 1, 2024, more than 21 days before this trial is scheduled to begin on July 23, 2024. Accordingly, it is timely, and Defendant's timeliness objection is without merit.

2. **Testimony of Plaintiff**

   a. Questions regarding the procedure of Defendant's "investigation" into alleged poor workplace behavior are relevant to Plaintiff's claim that the "workplace behavior" investigation was a sham, concocted to justify Defendant's plan to terminate him for his protected political and religious speech.

   b. See (a) *supra*.

   c. Claims that Wormser, as the official with authority to terminate Plaintiff, did so because of discrimination against Plaintiff's religious beliefs, are clearly relevant to the First Amendment free exercise claim with this Court ruled survived the motion to dismiss. Plaintiff has clearly alleged that prior Individual Defendants Dolan and Wodicka colluded with Wormser to terminate Plaintiff because of his political and religious speech. Evidence going to Wormser's distaste for Plaintiff's religious beliefs is relevant to a surviving claim herein.

   d. Plaintiff's claims that his political and religious speech was treated differently from that of other firefighters is not offered to show an equal protection violation, but rather to show that Plaintiff was discriminated against due to the viewpoint of his speech. Plaintiff would be hardpressed to

make such a showing without showing that speech of opposing political and religious perspectives is acceptable to the City, while Plaintiff's is not. The evidence is not only relevant, but directly central to Plaintiff's First Amendment allegations.

3. Testimony of Gregory Wormser

See 2(d) *supra*. Chief Wormer's disparaging comments about Plaintiff's religious beliefs at the Employee Appeal Board hearing, relating to Wormser's decision-making in the investigation of Plaintiff, is directly relevant to the surviving Free Exercise claim.

4. Testimony of Michelle Jackson

The Employee Appeal Board (EAB) was the final determining organ of the City in deciding whether to uphold Plaintiff's termination. Stephanie Berkland, a member of the EAB, is expected to testify that the EAB upheld Plaintiff's termination in significant part because of his political speech critical of then-Mayor Mary Jane Dolan. Accordingly, evidence as to the proceedings used in reaching that determination is relevant to the surviving free speech claim.

5. Testimony of Jamie Maxwell

This Court has ruled that Plaintiff's speech that was part of his activity on behalf of the firefighters union is relevant and part of the surviving free speech claim. In addition, Defendant claims that one reason for Plaintiff's termination was "illegal recording" of a meeting involving Maxwell and Plaintiff as representatives of the union. Thus, Maxwell's testimony is directly relevant to one of Defendant's primary defenses to Plaintiff's claim that he was terminated for his speech.

6. Testimony of Eric Smith

Smith was one of two firefighters who worked directly under Plaintiff's leadership. Defendant defends against Plaintiff's free speech claim at least in part on the grounds that his speech affected the City's ability to perform its functions, due to alleged "fear" on the part of activist complainants that Plaintiff would provide less than competent service to "transgender" persons. In addition, the City repeats ad nauseum that Plaintiff's speech is "transphobic." Evidence that Plaintiff had previously rendered such

service competently and professionally to "transgender" individuals is directly relevant to Plaintiff's claims and the City's defenses on the free speech claim.

7. Testimony of Stephanie Berkland

As Plaintiff made clear in his witness list submission, Berkland is expected to testify that a significant factor in the EAB's upholding of his termination was his speech critical of the Mayor. This is directly relevant to Plaintiff's claim that the City punished him for speech critical of an Individual Defendant.

8. Testimony of Brennan Lawson

See 1(d) *supra*. Again, claims that Plaintiff was punished for political speech as a supposed "violation" of City policy, while another firefighter engaged in opposing political speech that arguably also violated City policy and was not punished, is directly relevant to Plaintiff's claim of viewpoint discrimination for his speech.

9. Testimony of Brian Smith

Plaintiff is not likely to call Mr. Smith at trial, but included him to reserve the right to do so if time allows. Again, testimony that other City employees engaged in competing political speech (only in Wormser's case, on City time, in uniform and on City property), that went unpunished, while Plaintiff's disfavored speech was punished, is not only relevant but central to Plaintiff's claim of viewpoint discrimination.

### III.     RESPONSE TO OBJECTIONS TO EXHIBIT LIST

1. Plaintiff does not have a final order for the exhibits yet, as he is still finalizing the sequence in which they will be presented, and intends for that order to be as sequential as possible.

2. Plaintiff indeed has listed the same document in multiple instances, as in several cases, the same document will be offered to multiple witnesses to elicit their testimony. Plaintiff has shared with Defendant a Google Drive folder broken down by each anticipated witness. Where it is the case that multiple witnesses are expected to be offered the same document, Plaintiff has included the same exhibit in that witness's corresponding folder.

3. The Investigation Timeline is intended as a demonstrative exhibit to assist the jury in understanding a complicated factual timeline. Plaintiff intends to testify as to the events and dates on the timeline as they occurred, most likely in a concluding segment of testimony. Plaintiff created the timeline.

4. As noted in Section I *supra*, the widely disparate treatment by Defendant of the widely politically disparate speech of Firefighters Younger and Misjuns is relevant and material to Plaintiff's viewpoint discrimination claim.

5. See #2 s*upra.*

6. All declarations and deposition transcripts are intended for use for impeachment only, or in Plaintiff's case, possible refreshment of recollection. Plaintiff understands that he cannot use a declaration or deposition transcript for any other testimonial purpose.

7. Numerous City witnesses claim (incorrectly) that Plaintiff's Facebook page identified him as a firefighter. Plaintiff offered the update history to ask the witnesses if they could show any such identification. Plaintiff himself can and will certainly authenticate the update history.

8. See #2 s*upra.*

9. Plaintiff is ready and willing to supplement the remaining two pages of the petition. Only the first page has the statements the City criticized as "violations of policy" in its "investigation" of Plaintiff. The remaining pages are irrelevant but Plaintiff is ready and willing to supplement.

10. The City Council minutes are relevant to show Plaintiff's ongoing political speech on behalf of the IAFF Local 1146 firefighters union. They are relevant to show that Plaintiff's union speech is political and thus protected by the First Amendment. His advocacy before City Council is overtly political. They are also relevant for impeachment purposes as Dolan, who was present for the meeting in question, testified at trial that she was unaware of Plaintiff's existence before the editorial cartoons in question were published. The minutes demonstrate

      that Dolan was present, and that Plaintiff spoke before the Council in his capacity as a union officer.

11. The Second Amendment sanctuary posts are relevant for impeachment purposes. Dolan testified at her deposition that she was frightened by citizen comments in support of Plaintiff in response to his petition, to the point that she requested added security at her home. She also testified that the level of activism over the sanctuary issue did not frighten her. But at the time, she made multiple statements that she was frightened and requested added security. This is relevant both for impeachment, and to show that Plaintiffs' political opponents exaggerated the level of "disruption" caused by his reposting of editorial cartoons.

12. Plaintiff likely will not submit the VPAP donations. However, a showing that Dolan is a political opponent is relevant for demonstrating Plaintiff's case that left-leaning speech by his co-workers was tolerated, while he was punished for the viewpoint of his right-leaning speech. The inference that Dolan's politics may have influenced her reaction is wholly relevant.

13. Some of the activists who emailed complaints about Plaintiff's speech are indeed scheduled to be called as witnesses (e.g., Michael Kittinger). For the others, any statements made by the activists are not offered for the truth of any matters asserted therein. Instead, they are offered to show the responses of City actors such as Dolan and Wodicka, and the varying responses of those actors depending on the viewpoint expressed in the citizen complaint. None of the statements by any activist who is not an in-person witness is offered for its truth. The City actors' responses are the only statements offered for their truth. Those actors will all be called as witnesses. The filename is irrelevant; Plaintiff is aware the conspiracy charge is dismissed, but has not changed filenames on exhibits.

14. See # 6 *supra*.

15. See #7 supra.

16. Plaintiff proffers state law sections to question City actors about the interplay between state law and the City policy handbook. He also proffers them as defenses to City claims (such as City claims about improperly dispensing salary information of fellow employees, when in fact state law requires such information to be publicly available upon request. Plaintiff is entitled to ask City actors who made these claims against them how an action protected by state law is a violation of City policy. Plaintiff understands his state law claims have been dismissed, and will utilize these code sections for defensive purposes against City allegations, not to establish entitlement to damages under state law.

17. See I.9 *supra*.

18. See # 16 *supra*.

19. See #2 *supra*.

20. See #2 *supra*.

21. Plaintiff offers this exhibit for potential impeachment only.

22. Plaintiff offers the transcript of Fire Chief Wormser's interrogation of Plaintiff to question him as to the accuracy of statements therein. He will be available for live testimony, and Plaintiff is entitled to ask him about statements in the transcript, just as he is entitled to ask him about statements in his Notice of Termination, Report of Investigation, and other documentary statements he has made throughout the "investigation" of Plaintiff.

23. The Wormser Permission Slip is offered as a defense to Deputy Chief Lipscomb's accusation that Plaintiff was not readily available for an interrogation, Chief Wormser had banned Plaintiff in writing from City property unless written permission was granted. The City cannot use Plaintiff's unavailability for the interrogation as evidence against him, and deny him use of the evidence showing the City banning him from City property.

24. Plaintiff's Grievance Submissions are offered to show that Plaintiff in fact raised complaints in writing over City violations of its own policies, and City refusal to provide him evidence to which he was entitled for use in his defense. Plaintiff will of course testify in person to these

facts; the Grievance Submission is offered as contemporaneous evidence that Plaintiff had provided the written complaints. Plaintiff will be questioned about the statements in the documents. The statements in the documents are not offered for their truth; Plaintiff will testify to those facts. The documents are offered only to show that they were provided to the City.

25. See #2 *supra*.

26. See #24 supra.

27. See #2 *supra*.

28. See #2 *supra*.

29. Plaintiff agrees that Wormser's declaration can be used for impeachment only.

30. See #2 *supra*.

31. See #2 *supra*.

32. This document is offered as a defense to Deputy Chief Lipscomb's claim in his Report of Investigation that Plaintiff made himself difficult to reach for the interrogation. Plaintiff is entitled to introduce contemporaneous written communication between himself and Lipscomb to defend the claim. Plaintiff will testify and authenticate the statements. The statements in the documents are not offered for their truth; Plaintiff will testify to those facts. The documents are offered only to show that they were provided to the City.

33. See #32 *supra*.

34. See #2 *supra*.

35. Plaintiff agrees the declaration can be used for impeachment only.

36. The Lombre transfer request is offered for impeachment only. Plaintiff expects City actors to testify that Lombre requested a transfer because of bad blood with Plaintiff. Plaintiff intends to introduce the transfer request only to inquire of any such City actor whether it makes any such claim. Plaintiff has a subpoenaed witness to testify that bad blood with Plaintiff was not

    why Lombre requested the transfer and understands he is limited to the live testimony other than for impeachment.

37. See #2 *supra*.

38. Plaintiff claims that Defendant violated multiple City policies in terminating him, mostly with regard to the second sham "workplace behavior" investigation, and that the multiple violations evidence the pretextual nature of the City's "workplace behavior" investigation. The City's policy manual allows only the City Manager to make exceptions to the policy manual. Evidence that no exceptions were made, and policies were violated in the pursuit of getting rid of Plaintiff, is directly relevant to his claim that the "workplace behavior" investigation was pretextual.

39. See #2 *supra*.

40. Plaintiff agrees the declaration can be used for impeachment only.

41. Plaintiff agrees the declaration can be used for impeachment only.

42. Plaintiff agrees the declaration can be used for impeachment only.

43. See #16 *supra*.

44. See #2 *supra*.

45. Plaintiff does not plan to offer the McCrickard text messages. Mr. Maxwell will testify in person instead.

46. Plaintiff agrees the declaration can be used for impeachment only.

47. See #24 *supra*.

48. Battalion Chief Allen Carwile, who wrote the Employee Review will be called to testify to the statements he wrote. The Employee Review is subject to the business records exception, It was kept in the ordinary course of business and in no anticipation of litigation. Chief Carwile's observations of Plaintiff's workplace behavior directly contradict the picture painted by Defendant's sham investigation, and were compiled contemporaneously by

Plaintiff's direct supervisor. They are directly relevant to Plaintiff's claim that the City's "workplace behavior" investigation was indeed a sham.

49. Plaintiff intends to offer the text message thread, between Plaintiff and Carwile, as a contemporaneous "present sense impression" of Carwile's thoughts at the time. Carwile will be present and will testify in person to the facts as well.

50. See #2 *supra*.

51. See #2 *supra*.

52. Plaintiff agrees the declaration can be used for impeachment only.

53. See #2 *supra*.

54. The Brennan Lawson documents are business records, kept by the Department in the regular course of business. Mr. Lawson has been summoned to testify about the contents in person. As noted supra, the widely disparate treatment of Plaintiff's alleged "violations" versus alleged violations by a firefighter of a widely disparate political perspective, are relevant to show viewpoint discrimination. Firefighter Younger's actions, combined with political speech to which Lawson will also testify, illuminates the blatant partisanship of the City's viewpoint discrimination against Plaintiff.

55. See #54 *supra*.

56. See #2 *supra*.

57. Plaintiff does not intend to introduce the affidavit at this time. Ms. Berkland has been summoned to testify to its contents in person.

58. See # 2 *supra*.

59.  See # 2 *supra*.

60. Plaintiff will testify in person to the contents of his statements on WLNI.

61. See # 2 *supra*.

62. See # 2 *supra*.

63. See # 2 *supra*.

64. See # 2 *supra*.

65. See # 2 *supra*.

66. See # 2 *supra*.

67. Plaintiff can testify that his grievance was denied and does not need to submit the proposed exhibit.

68. This document is offered as a defense to Deputy Chief Lipscomb's claim in his Report of Investigation that Plaintiff made himself difficult to reach for the interrogation. Plaintiff is entitled to introduce contemporaneous written communication between himself and Lipscomb to defend the claim. Plaintiff will testify and authenticate the statements. The statements in the documents are not offered for their truth; Plaintiff will testify to those facts. The documents are offered only to show that they were provided to the City.

69. In response to this objection, the objected exhibits have been broken down into five component parts, which have been provided to Defendant individually. #1 is an email from Fire Chief Wormser to Plaintiff advising of his "Loudermill" appeal hearing. It can be used to impeach Wormser if necessary. #2 is Wormser's Notice of Intent to Dismiss, which is available under the Business Records exception. Wormser will be asked about the contents of his termination documents (Notice of Intent to Dismiss, Termination Letter, Report of Investigation, etc) personally. #3 is affidavits provided to Wormser by Plaintiff in his own defense. They are offered not for the truth of any matters therein, but only to establish that Plaintiff in fact presented information in his defense before his termination. As to the truth of the matters therein, the affiants have been called as witnesses, and will testify to the information personally without need for the use of the affidavits. #4 is an email from Wormser to Plaintiff referencing documents for the Loudermill hearing. It can be used to impeach Wormser if necessary. Finally, #5 is a copy of Wormser's Termination Letter, which was also included among exhibits about which Wormser will be personally questioned.

70. Plaintiff's Grievance Submission is admissible under the Recorded Recollection exception, and can be used to question Plaintiff in the event he cannot recall specific details of the communications he sent to City officials during his grievance process. It should also be part of Plaintiff's grievance file, in the possession of Michelle Jackson and Human Resources. Ms. Jackson has been summoned as an in-person witness.

71. Plaintiff can testify to the contents of the emails he sent, which is the great bulk of the proposed exhibit. Those emails at least are admissible under the Recorded Recollection exception, and can be used to question Plaintiff in the event he cannot recall specific details of the communications he sent to City officials during his grievance process.

72. Plaintiff agrees that the affidavits can be used only for impeachment purposes.

Respectfully Submitted,

Martin J. Misjuns, By Counsel

_____/s/_____
Rick Boyer, Esq.
INTEGRITY LAW FIRM, PLLC
P.O. Box 10953
Lynchburg, VA 24506
Tel: 434/401-2093
Fax: 434/239-3651
Email: rickboyerlaw@gmail.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2024, I caused a true and accurate copy of the foregoing to be sent to the following counsel for Defendants via this Court's CM/ECF system:

Jennifer D. Royer, Esq. (VSB No. 68099)
Kristin Wright, Esq.
ROYER LAW FIRM, P.C.
1901 Denniston Ave., SW

P.O. Box 4525
Roanoke, VA 24015
Phone: 540-788-2982
Fax: 540-675-4093
Email: jroyer@royerlawfirm.com
kwright@royerlawfirm.com

Matthew C. Freedman, Esq.
900 Church Street
Lynchburg, VA 24504
Phone: (434) 455-3980
Fax: (434) 847-9049
Email: matthew.freedman@lynchburgva.gov
*Counsel for Defendant*

_____/s/_____
Rick Boyer, Esq.